### 4585.   PLUMER *v.* CONTINENTAL CASUALTY CO.

1. The punctual payment of insurance premiums, as and when due, is of the essence of the contract of insurance, and a failure to make such payment in strict compliance with the terms of the contract, in the absence of a waiver expressly made, or arising by reasonable implication, results in a forfeiture of the policy.
2. A waiver is the voluntary relinquishment of some known right, benefit, or advantage which the party would otherwise have enjoyed. Waiver is essentially a matter of intent based upon full knowledge of all the material facts, and the evidence relied upon to prove a waiver must be so clearly indicative of an intent to relinquish a then known particular right or benefit as to exclude any other reasonable explanation.
3. The uncontradicted evidence in this case demanded the finding that the policy had lapsed upon a failure to pay premiums, and that there was no waiver, express or implied, by the insurance company.

DECIDED APRIL 16, 1913.

Action on insurance policy; from city court of Atlanta—Judge Reid. December 7, 1912.

The action was upon a policy of accident insurance. The case was submitted to the judge of the city court without the intervention of a jury, on a stipulation as to the facts, substantially as follows: The policy was issued on a monthly plan, the premium of $2.50 being required to be paid monthly in advance, in order to keep the policy in force. The first premium was paid about June 1, which kept the policy in force for one month and up to July 1. This was the only payment that the plaintiff ever made on the policy. On September 6, 1912, at 11 o'clock a. m., the plaintiff received an accidental injury, resulting in the loss of a leg. Without knowledge of the accident, the insurance company on the same date, from its office in Washington, D. C., mailed a postcard notice to the plaintiff calling his attention to the fact that his premium for July had not been paid, and noting the good points of the policy contract, and urging him to pay up the arrears of the premiums. On September 8, two days after the accident, he agreed to pay the premiums in arrears, to wit, the premiums for July,

August, and September. This offer was declined at the local office of the company. The policy provided how it could be reinstated after having lapsed for a failure to pay premiums. It left the question of reinstatement optional with the local office, but provided that if reinstated, it should be considered operative for the future only, and was not to cover any injury that might already have been incurred. The defendant contended that since the plaintiff had paid for only one month's insurance, to wit, for the month of June, the policy contract, by its terms, lapsed because of the failure of the plaintiff to pay further premiums, and was of no force except as to the option of reinstatement as provided therein. The plaintiff contended, that the sending of the post-card notice, under a proper construction of the language thereof, was first a declaration by the company that the policy had not lapsed, but was still in force; and that, by this admission or declaration of the company, he was protected under the policy for the months during which the premiums had not been paid, to wit, July, August, September; and further, that this post-card was not only a recognition that the policy was still in force, but constituted also a waiver by the company of any forfeiture of the policy by reason of the non-payment of the premium, since it was an effort on the part of the company, with knowledge that the premiums had not been paid, to collect them from the insured, and amounted substantially to a reinstatement of the policy by the company, and that this reinstatement operated retrospectively, so as to cover the accident to the plaintiff on September 8, 1912. The trial judge found in favor of the insurance company, and the plaintiff excepts to this finding.

*Edgar Latham*, for plaintiff, cited: *Farmers Mutual Life Protective Asso.* v. *Elliott*, 4 *Ga. App.* 342; *Locomotive Engineers' Mut. L. Asso.* v. *Bobo*, 8 *Ga. App.* 157; *Williams* v. *Empire Mut. Ins. Co.*, 8 *Ga. App.* 304 (4), (7), (8), 312; *Franklin L. Ins. Co.* v. *Boykin*, 10 *Ga. App.* 345.

*Robert H. Jones Jr., Little & Powell, Manton Maverick*, for defendants, cited: *Ill. L. Ins. Co.* v. *McKay*, 6 *Ga. App.* 285; *Travelers Ins. Co.* v. *Thornton*, 119 *Ga.* 455 (5); *Reed* v. *Travelers Ins. Co.*, 117 *Ga.* 116; *Crosby* v. Vermont Accident Ins. Co., 84 Vt. 510 (80 Atl. 817 (5)); *Wallace* v. *Metropolitan Ins. Co.*, 10 *Ga. App.* 521; Thimpson v. Fidelity Mut. L. Ins. Co., 116 Tenn. 557

(92 S. W. 1098, 6 L. R. A. (N. S.) 1039) ; Re Millers &c. Ins. Co., 97 Minn. 98 (4 L. R. A. (N. S.) 231) ; Deming Inv. Co. v. Shawnee Fire Ins. Co., 16 Okla. 1 (83 Pac. 918, 4 L. R. A. (N. S.) 607) , Berman v. Fraternal Health &c. Asso. (Maine), 78 Atl. 463 (4) ; Parker v. Knight Templars Asso. (Neb.), 97 N. W. 281 (3) ; *German American L. Ins. Co.* v. *Farley,* 102 *Ga.* 720; *Stephenson* v. *Empire L. Ins. Co.,* 139 *Ga.* 82 (76 S. E. 592) ; cases cited for plaintiff, as to benevolent or fraternal associations, distinguished.

HILL, C J. (After stating the foregoing facts.) The provision for the punctual payment of the premiums when due is of the essence and substance of insurance, and a failure to comply therewith in strict accordance with the requirement of the contract, in the absence of waiver, express or implied, inevitably results in a forfeiture of the policy. This is but a repetition of the universal rule that premiums must be paid as and when required by the policy, or the contract dies, with the consequent loss of protection. *Illinois Ins. Co.* v. *McKay,* 6 *Ga. App.* 285 (64 S. E. 1131). In the policy now under consideration it is expressly stipulated as follows: "The whole policy continues in effect as long as the premiums shall be paid as agreed in the application therefor, unless it be sooner terminated in accordance with its terms. If any installment of premium shall not be paid when due in accordance with the terms of said application, its subsequent acceptance shall be optional with the company at its office named herein as the place of issue, and *if accepted,* the policy shall be reinstated thereby so far as accident insurance is concerned, *to date from 12 o'clock noon of the day following its receipt; and neither the insured nor the beneficiary shall be entitled to recover indemnity for any loss resulting from injury incurred subsequent to default and prior to the date of reinstatement as herein provided.*" It can not be doubted that the foregoing stipulation is in every respect lawful. It puts the insured on notice that upon failure to pay his premium his policy lapses, but nevertheless it points out that his policy can be reinstated. This benefit of reinstatement, however, is not because of an interest in the policy which has lapsed (for the insured has no longer any interest in the policy), but the company simply gives the insured the privilege of having his policy reinstated, this reinstatement to be effected only by the payment of all past-due premiums. The new con-

tract does not have the effect to restore the protection lost on the lapse of the previous policy by failure to pay the premium, but becomes effective prospectively, so that the new policy can not cover any accident or injury which took place between the lapse of the old policy and the reinstatement. If, therefore, the insured had paid the past-due premiums on receipt of the notice of non-payment, relied upon as evidence that the company did not regard the policy as lapsed, or as evidence of a waiver of the failure to pay the premiums and an indication that the premiums would then be accepted and the policy restored, the reinstatement would not have taken place until after the accident. As clearly stated by learned counsel for the defendant, "Suppose the insured had paid the cash on the day and hour on which the notice was sent, what would have been the effect on the policy? He would not have been entitled to any indemnity as to this accident, because, under the very terms of the policy, it would not have been in force until 12 o'clock noon of the day following the payment of the arrears, which was two days after the accident in question."

The insured was injured on September 6, at 11 o'clock in the morning. At the time the post-card was mailed the company had no knowledge of the fact that the plaintiff had been injured. He received the post-card after his injury, and he then offered to pay the defendant at its local office the premiums which were in arrears, and the offer was refused. If his offer had been accepted and he had paid the cash on that date (which, according to the statement of facts, was September 8), this payment and acceptance of the premiums would not have had the effect of restoring the old policy and making it cover any injury which had been received after July 1, when it lapsed for non-payment of premium; in other words, would not have automatically restored to the insured the protection which he had forfeited for the months of July, August and September, so as to cover the date when his injury was received, but would only have reinstated him as a policy-holder, the reinstatement to take effect and to become of force at 12 o'clock noon of the date following the payment of the premiums, which, according to the evidence, was two days after the injury had been received. But the company had the right to refuse to reinstate the policy, and it did refuse. It doubtless based its refusal upon knowledge of the fact that the injury was received by the plaintiff after the

policy had lapsed and when protection no longer existed. This was a valid and sufficient reason for refusal. Accident and life insurance companies are not institutions of charity or benevolence, but are institutions solely for protection. In a sense they have no right to extend liberality by a violation of any of the terms of the contract, for their first duty is to all the policy-holders. An insurance company should enforce all the terms and conditions of its policy contracts, not primarily for the benefit of the company itself, but for the interest of all of its policy holders.

In the case of Crosby v. Vermont Accident Ins. Co., 84 Vt. 510 (80 Atl. 817), cited in the brief of counsel for the defendant, the policy provided for premium payments on the first of each month, and that in the event of arrears and reinstatement the policy should date from the following day. The headnote of that decision is as follows: "Each of the payments on the policy from the four months since February was made after the first day of the month, and after an accident on June 5th, the insured on June 7th sent the premium for that month, which was accepted June 8th in ignorance of the accident. Held, in an action on the policy, that, construing the provisions together, it had lapsed from June 1st, until its renewal on June 8th, and that as to the accident which occurred during that time the plaintiff was not insured." Without extending the discussion of this branch of the case further, it is clear, under the statement of facts, that the plaintiff, at the time of the accident, had no contract of protection with the defendant company.

We will now briefly consider the contentions of the plaintiff that the insurance company did not treat the policy as having lapsed, but admitted and recognized it as existing and of force at the time of the accident, and that the company had waived any forfeiture of the policy resulting from a failure to pay the premiums. The evidence relied upon by plaintiff in support of his contentions is the post-card notice which was mailed to the insured from the home office of the company on September 6. This notice was on a printed form, presumptively used by the company generally as a reminder to policy-holders of arrears in the payment of premiums. It was as follows: "We regret to note that our local treasurer's report for the month of July does not include the premium on your policy No. 224268. We hardly think it can be your intention to drop your insurance, and now that the matter

has been called to your attention, we trust that you will immediately call upon the local treasurer named in your receipt-book and make payment, or remit direct to this office, as may be most convenient to you. If this notice is not correct, advise this office at once as to the date upon which you made the payment and to whom it was made. The company is one of the largest and best in America (over $2,000,000.00 of its assets are deposited with the State Insurance Departments for the exclusive protection of policy-holders to guarantee the payment of their claims). Yours truly, Holcombe G. Johnson, Resident Manager." Construing the language of this post-card notice in connection with the conditions of the policy, it simply amounts to a request on the part of the manager of the company that the plaintiff would pay past-due premiums, and thus place himself in a position where he could be reinstated as a policy-holder. It was a recognition that at the time the post-card notice was sent, the insured was without the protection of the contract. We construe this post-card notice simply as a mere formal reminder by the company to the insured of his situation, in order that he might exercise the privilege under his contract of paying the past-due premiums and of being reinstated as a policy-holder. When this post-card notice was written, the company had no knowledge that the injury had been received. Surely the post-card in question could not in any sense be construed as a waiver of the terms of the policy contract as against the injury which the plaintiff had received when the policy was not in force.

Waiver is based upon knowledge. It can not be implied where the party in whose favor the right existed is ignorant of his right or of any fact which would substantially or materially affect the exercise of that right and tend to prevent a waiver. As well expressed in the case of Berman v. Fraternal Health & Accident Association, 107 Me. 368 (78 Atl. 462), "A waiver is the voluntary relinquishment of some known right, benefit or advantage which the party otherwise would have enjoyed, it being essentially a matter of intent, and when the only proof of that intent rests in what a party does or forbears to do, his acts or omissions should be so manifestly indicative of an intent to voluntarily relinquish a then known particular right or benefit that no other reasonable explanation is possible—full knowledge of all the material facts that establish such right being necessary." Or, as held by the Supreme Court in

*German Am. L. Ins. Co.* v. *Farley,* 102 *Ga.* 720 (29 S. E. 615), to constitute a waiver, "Knowledge of the right alleged to have been waived must have been brought home to the insurer." This postcard notice was not even written until after the injury had been received by the plaintiff. At that time the policy was dead, and, according to its terms, the insured could do nothing except reinstate the policy on payment of the past-due premiums, and when reinstated it would not become effective, under the facts of this case, or binding upon the company, until after the premiums had been accepted and the policy-holder reinstated. The cases decided by this court which are relied upon by the plaintiff in error are every one distinguishable, on the facts, from the present case, and the decision here rendered is not in conflict with any of the previous decisions of this court on the same subject. This court, believes in the doctrine universally applied, that insurance contracts should be construed so as to prevent forfeitures, but it believes as strongly in the inviolability of contracts, and it does not believe that there is any principle of insurance, however liberal the construction of the contract may be in behalf of the insured, that would authorize a court of justice to permit a recovery under a policy contract which, by its terms, had been allowed to lapse by a failure to pay the premiums, as and when due, upon a mere tender of such past-due premiums by the insured, which tender was inspired not by a purpose to restore or reinstate his contract, but by a manifest purpose to secure an indemnity for a loss which had occurred when the policy was not in force and when the company was under no obligation to give him any protection. Nor are we willing to hold that a mere reminder of delinquency shall have the effect of overriding the express terms of a contract, and be construed as a waiver of the most vital and important terms of the contract, to wit, the prompt payment of premiums, as and when due.                                   *Judgment affirmed.*