28873.   GENERAL AMERICAN LIFE INSURANCE COM-
PANY *v.* BUTTS, administrator.

Decided May 8, 1941.   Adhered to on rehearing July 22, 1941.

*Powell, Goldstein, Frazer & Murphy, Elliott Goldstein,* for plaintiff in error.

*W. M. Dallas, John H. McGehee,* contra.

SUTTON, J. Mrs. Sallie Butts brought suit against General American Life Insurance Company on a policy of insurance. Subsequently she died and L. L. Butts was appointed administrator of her estate and was substituted as a party plaintiff in the suit. The petition as amended alleged that on June 29, 1907, the Empire State Life Insurance Company issued to John H. B. Butts, the husband of Mrs. Sallie Butts, its policy No. 10660 insuring the life of John H. B. Butts in the sum of $2500, naming the executors, administrators, and assigns of the insured as beneficiary, a copy of the policy being attached to the petition as exhibit "A" and made a part thereof; that thereafter by a certificate of modification and assumption issued to the insured under date of August 25, 1916, the International Life Insurance Company assumed the obligations of the said policy No. 10660 in accordance with the terms of a certificate issued by it, a copy of which certificate was attached to the petition as exhibit "B" and made a part thereof; that thereafter by a certificate of assumption issued to the insured under date of August 25, 1928, the Missouri State Life Insurance Company assumed the obligations of the International Life Insurance Company under the said policy No. 10660 in accordance with the terms of a certificate issued by it, a copy of which certificate was attached to the petition as exhibit "C" and made a part thereof; that thereafter by indorsement on said original policy No. 10660 by the Missouri State Life Insurance Company the beneficiary of the policy was changed to Sallie Butts, wife of the insured, a copy of said indorsement being attached to the petition as a part of exhibit "A"; that thereafter by a certificate of assumption issued to the insured under date of September 7, 1933, the General American Life Insurance Company, the defendant, assumed the obligations of the Missouri State Life Insurance Company under said policy No. 10660 in accordance with a certificate issued by it, a copy of which was attached to the petition as exhibit "D" and made a part thereof; that the insured died on September 26, 1934, and

that on September 29, 1934, Mrs. Sallie Butts, the beneficiary named in said policy, advised the defendant of the death of the insured and requested that it send the necessary papers to execute, a copy of which letter was attached to the petition and made a part thereof; that on October 5, 1934, the defendant, in reply to said letter, disclaimed all liability under the policy on the alleged ground that the same had lapsed and become valueless prior to the death of the insured, as shown by copy of letter attached to the petition as exhibit "F" and made a part thereof, and since the date of said letter the defendant has continuously refused to furnish proof blanks or pay the claim; that the said policy contained the following provision which was binding on the defendant: "Automatically nonforfeitable. If any premium hereon shall not be paid when due, the company shall first apply any withdrawable surplus to pay the same, and the remainder of the premiums due, if any, shall be charged against this policy as a loan, if the respective loan value specified herein be sufficient to cover such advance, in addition to any existing liens and accrued interest, provided, that if the credits be not sufficient to cover the entire premium when due, the company shall apply the same, if sufficient to pay the premium for a shorter period, but not less than a full quarterly premium. At any time while this policy is thus sustained in force, the payment of premiums may be resumed without medical examination and the accumulated premiums may be paid or allowed to stand as a lien against the policy. No grace will be allowed under this provision;" that all premiums due on said policy were fully paid up to June 29, 1934; that the quarterly premium due June 29, 1934, was not paid by the insured on said date or within thirty days of said due date; that on June 29, 1934, the accrued cash value under said policy amounted to $1447, and the outstanding indebtedness, including both principal and interest, amounted to $1427.51, thereby leaving a remaining equity in the amount of $19.49; that the amount of this equity was known to the defendant, but was not known to the insured and could not have been computed by him by reference to the terms and conditions as set out in said contract of insurance; that under the provisions of the automatically nonforfeitable clause of said contract of insurance, as hereinabove set out, the defendant applied this equity of $19.49 to the purchase of extended insurance, and did carry said contract as extended insur-

ance to August 6, 1934, this being the date to which such equity was sufficient to extend the contract; that under said clause, as assumed by the defendant, it was the duty of the defendant to notify the insured a reasonable length of time before the policy expired of the amount of the loan value available to extend the insurance and the date to which such loan value would keep the policy in force; that the defendant absolutely failed to notify the insured as to the amount of loan available for the purpose of extended insurance or that it had in fact so applied the net loan value or the date to which such loan value was sufficient to carry the policy as extended insurance; that on September 20, 1934, the quarterly premium due June 29, 1934, was tendered to the defendant and was refused; that due to the failure of the defendant to notify the insured as to the amount of loan value applied to the purchase of extended insurance or the date to which said policy was extended by such application, which was in fact made, the policy of insurance here sued on was in full force and effect on the date of the death of the insured.

A copy of the purchase agreement between the superintendent of the insurance department of the State of Missouri and the defendant was also attached to the petition in connection with the copy of certificate of assumption of the obligations under the policy No. 10660. In addition to the above-quoted "automatically nonforfeitable" clause the copy of policy attached to the petition contained, among others, the following provision: "The premiums hereon may be paid annually, semiannually, or quarterly, in advance, in accordance with the company's table of rates applicable hereto, but in any event this policy shall continue in force only during the time actually paid for, except as herein provided; the unpaid portion of the year's premium, if any, and any indebtedness of the insured or the beneficiary to the company on account of this contract, or otherwise, shall be deducted from any settlement on this policy or any benefit hereunder; notice of each and every premium due or to become due hereon is given and accepted by the delivery and acceptance of this policy; . . if any premium is not paid on or before the day it is due, or if any note or notes or other obligation given to the company or any of its agents for the whole or any part of the first or any subsequent premiums or any other payment under this policy be dishonored or not paid on or before the

day when due, this policy shall, without any affirmative act on the part of the company or any of its officers or agents, be null and void except as herein provided. . ." The original policy provided for an annual premium of $96.37, but, as shown by the exhibit attached to the petition, was reduced to $83.03 in the certificate of modification and assumption by the International Life Insurance Company, the obligations of which finally devolved upon the defendant in the manner above set out. Judgment was prayed for $1072.49 with interest thereon from September 26, 1934, and for 25 per cent. penalty and attorney's fees.

The defendant filed general and special demurrers to the petition which, after the petition was amended, were renewed, and also filed an answer admitting the truth of the allegations of the petition as to the manner in which it became the insurer under the terms of a certificate of assumption, the change of beneficiary, the death of the insured on September 26, 1934, that the policy contained the "automatically nonforfeitable" clause set out in the petition, that the accrued cash value of the policy on June 29, 1934, was $1447, the outstanding indebtedness, including principal and interest, was $1427.51, leaving an equity in the amount of $19.49; that under the provisions of the automatically nonforfeitable clause it applied the equity of $19.49 to the purchase of extended insurance and did carry the contract as extended insurance to August 6, 1934, the date to which such equity was sufficient to extend the contract. It admitted that the premiums had been paid to June 29, 1934, but alleged that some of them had not been paid in cash but by being charged against the policy and that the loan interest due June 29, 1934, was never paid or tendered, but denied that the amount of the equity of $19.49 was not known to the insured or could not have been computed by him. It denied that under the terms of the automatically nonforfeitable clause it was its duty to notify the insured, a reasonable length of time before the policy expired, of the amount of the loan available to extend the insurance and the date to which such loan value would keep the policy in force, denied that it failed to notify the insured as to the amount of loan value available for the purchase of extended insurance and the date to which such loan value would keep the policy in force and denied that the policy was in full force and effect on the date of the death of the insured. It alleged that the insured, on September 15, 1934,

did send a check for $22 to its collecting agents at Augusta, Georgia, enclosed in a letter, a copy of which was attached to the answer as exhibit "A" and which read: "Enclosed find ck. for $22 for a quarterly payment on my policy No. E. M. 10660. This is all the money I can spare at this time. Will try to send another payment as soon as possible. Please mail me receipt for $22." It alleged that, as will appear from the face of said letter, the insured knew at the time he tendered the payment that this was not all that was due; that the policy had lapsed prior to that time and the insured was so informed and his attention called to the steps necessary to be taken if the policy was to be reinstated, and that, the insured never made application for reinstatement of the policy; that on October 5, 1934, the defendant, without prejudice to its rights, tendered the plaintiff, as the wife of the insured, the sum of $22.13, and that this amount was subsequently returned to the defendant who refused to accept it, and that at all times it has held the same as the property of the plaintiff and has made numerous efforts to deliver the same, and that the defendant again tenders said amount to the plaintiff and pays into court the said payment, together with interest in the sum of $6.51, and it denied that the plaintiff was entitled to recover any amount, damages, or attorney's fees.

The court overruled the demurrers and the defendant excepted pendente lite. Thereafter evidence was introduced by both parties, the substantial portion of which may be set forth as follows: The insured was a farmer and postmaster of the village in which he lived but had not had an education beyond the fifth grade; that he had no education in regard to insurance contracts, rates, interest or values, and had been in feeble health for some time prior to his death; that the policy did not contain in its tables of loan or cash values the necessary information as to what was available to the insured at the time a premium became due on June 29, 1934, and in a letter under date of April 8, 1935, the defendant admitted to one of the attorneys for the plaintiff that the calculations necessary to establish the equity were intricate; that at no time prior to August 6, 1934, the date when the defendant claims the policy lapsed, after extending the insurance to that date by using the admitted equity of $19.49 as of June 29, 1934, did the defendant give the insured any notice as to the amount of loan value or equity under the policy or any notice as to the time the available loan value

would keep the policy in force or any notice that it had applied the equity of $19.49 to extension of the policy to August 6, 1934, but that on August 30, 1934, the defendant advised the insured by letter that the policy had lapsed and suggested that application for reinstatement be made, together with certificate of good health; that the insured had kept the policy in force up to June 29, 1934, and the reserve value had been used in applying against it the amount of premiums due and the interest on outstanding loans; that the defendant had assumed the obligations of the policy about a year before the death of the insured, but that, prior to June 29, 1934, it had had no transactions with the insured. On the date mentioned the policy had a loan value of $1447 and the insured's indebtedness against this amount was $1427.51, leaving an equity available of $19.49, and this amount the defendant applied, without consulting the insured, to the purchase of extended insurance to August 6, 1934; that on July 28, 1933, when paying his annual premium to one of the predecessor companies, the insured, in remitting, added to his accompanying letter a postcript reading: "I am mailing check to pay up principal [premium] for one year, and leaving interest to eat up the policy;" that after the defendant had written the insured that the policy had lapsed on August 6, 1934, and suggested that he apply for reinstatement and furnish health certificate, the insured, on September 15, 1934, sent to the collecting agents of the defendant at Augusta, Georgia, a check for $22, stating that it was all that he could afford to pay at that time; that this check was forwarded to the defendant company at its home office in St. Louis, Missouri, and the check was cashed and the proceeds thereof retained until after the defendant had been notified of the death of the insured. Then, on October 5, 1934, the defendant sent its check to the plaintiff for the $22, which the plaintiff refused and returned to the defendant.

The court, trying the case without the aid of a jury, rendered verdict and judgment in favor of the plaintiff for $1072.49 principal and $454.19 interest and also costs of suit. The exception here is to the judgment overruling the defendant's demurrers and the judgment rendered in favor of the plaintiff.

■ The plaintiff in error contends that the general demurrer should have been sustained for the following reasons: that the pleadings showed that a forfeiture was provided in the policy in

case of non-payment of premiums; that the premium due June 29, 1934, was not paid; that while the company was not obligated under the "automatically non-forfeitable" clause to extend the insurance, inasmuch as it provided only that insurance would be extended if a sufficient equity existed amounting to a quarterly premium and the equity was only $19.49, which was less than the amount of a quarterly premium, it nevertheless extended the insurance to August 4, 1934, but during such period the insured did not make any premium payment and the policy became lapsed on the date mentioned; that although the insured sent a check for $22 on September 15, 1934, it was after the policy ceased to be in force and was refused, and the death of the insured on September 26, 1934, was after the expiration of the policy and the company was not liable in any amount.

The payment of a premium is a condition subsequent unless by contract made a condition precedent. *Lankford* v. *State Life Ins. Co.*, 57 *Ga. App.* 626, 634 (195 S. E. 907). Where a forfeiture provision is contained in a policy of insurance it is the general rule that "The punctual payment of insurance premiums, as and when due, is of the essence of the contract of insurance, and a failure to make such payment in strict compliance with the terms of the contract, in the absence of a waiver expressly made, or arising by reasonable implication, results in a forfeiture of the policy." *Plumer* v. *Continental Casualty Co.*, 12 *Ga. App.* 594 (77 S. E. 917); *Illinois Life Insurance Co.* v. *McKay*, 6 *Ga. App.* 285, 289 (64 S. E. 1131); *Metropolitan Life Ins. Co.* v. *Smith*, 48 *Ga. App.* 245 (172 S. E. 654). However, it has recently been held by this court that in a participating insurance policy, as in the present case, where the policy accumulates a loan value in the operating experience of the company, a policy can not be forfeited for non-payment of premium without notifying the insured of the amount of the loan value available at the time of the due date of the premium and the time of expiration of the policy, so that the insured may be able to know what amount to remit and keep the policy in force. *American National Insurance Co.* v. *Brown*, 58 *Ga. App.* 70 (197 S. E. 658). See also *Sovereign Camp W. O. W.* v. *Cooper*, 62 *Ga. App.* 390 (8 S. E. 2d, 161). In the *Brown* case it was said: "We deem it unnecessary to consider any but the one controlling issue in the case, and that is whether the company was under the

duty to notify the insured of the amount of the premium loan made and the time it would keep the policy in force, in view of the provisions of the policy. We think, and hold, that the company impliedly agreed, by agreeing to make such loans, to give such notice to the insured a reasonable length of time before the policy expired, for the reason that the company was in exclusive possession of the information and means to know the amount of the loan, and because the average person, even if he had the data, could not compute the same, while on the other hand the company employs an actuary, an expert, whose sole duty it is to perform the duty of making such complicated mathematical calculations. . . We think that under the facts in this case the company could not forfeit the policy without giving the insured notice of when his policy would expire."

The allegations of the petition as amended in the present case bring it within the ruling announced in the *Brown* case. It was shown that the insured had paid all premiums up to June 29, 1934, and that at that time the difference between the loan value and his indebtedness amounted to an equity of $19.49, but that the amount of this equity was not known to the insured and could not have been computed by him by reference to the terms and conditions as set out in the contract of insurance; that the company applied the equity of $19.49 to the purchase of extended insurance and did carry the contract extended to August 6, 1934, but that it failed to notify the insured as to the amount of loan available or that it had applied the equity in the manner stated. Obviously, under the ruling in the *Brown* case, it was under the duty to notify the insured of the amount of his equity so that he might, by a proper payment, quarterly or annual, keep the policy in force until another payment became due on September 29, 1934, and the action of the company in using the equity as it did, without consulting the insured, could not operate to deprive him of his right to be notified as hereinbefore pointed out. It was for him to determine whether or not his policy should be kept in force by the equivalent of a quarterly, semiannual, or annual payment, rather than be contented with the application of any given equity towards the purchase of insurance to a date determined by the company. Without respect to the allegation that on September 20, 1934, the quarterly premium due June 29, 1934, was tendered the company and re-

fused, it must be held that by reason of the fact of the company's failure to notify the insured as to the equity available on June 29, 1934, the policy continued in force at least for a quarterly period, that is, to September 29, 1934, and, hence, at the time of the death of the insured on September 26, 1934, within the quarterly period, the policy had not lapsed, and the amount recoverable was determinable by a consideration of the face value of the policy and any unpaid indebtedness of the insured. It necessarily follows from the above that the petition as amended set out a cause of action, and that the court did not err in overruling the general demurrer. The grounds of special demurrer, briefly stated, attack certain paragraphs of the petition as being mere conclusions, but are without merit, and no discussion is deemed necessary.

■ The evidence introduced on the hearing authorized the judgment. It disclosed that the premium due June 29, 1934, was not paid, but that the insured had an equity of $19.49 in the policy, and that the company failed to advise him, before June 29, 1934, of what loan value was available to him; that the insured was a man of limited education and unable to determine by the necessary intricate calculations the amount available to him under the policy, so as to arrive at the amount necessary to be sent the company to keep the policy in force. While the company was not obliged under the terms of the policy to apply the loan value of $19.49 on the payment of the premium due June 29, 1934, as that amount was not the equivalent of a full quarterly premium, still where, without consulting the insured, it undertook to use this amount for his benefit, then it should have applied it on the payment of premium, as the policy had theretofore been kept in force by the payment of premiums out of the loan value of the policy. Instead of doing this, the company used this amount in giving the insured extended insurance to August 6, 1934, without any request on the part of the insured to do so, on the basis of his attained age of 76 years at that time. It is contended by the plaintiff in error that the policy lapsed on August 6, 1934, and that to reinstate the policy it was necessary for the insured to remit the amount of the June 29, 1934, premium with interest on the loan, together with evidence of insurability, but that the insured sent only $22 and did not accompany it with a health certificate and that the policy did not become reinstated; that at the time of the death of the insured on

September 26, 1934, the policy was not in force and the company was not liable in any amount. We think the argument untenable for the following reasons: The company admits in its statement of facts in the brief of its counsel that the policy had been kept in force by charging against the reserve or loan value the premiums paid up to June 29, 1934, and also admits that on June 29, 1934, the insured had an existing equity of $19.49. In these circumstances and taking into consideration the "automatically nonforfeitable" clause, the policy would not cease to be of force for lack of a proper premium payment until the company gave the insured sufficient information to enable him to know what, if any, equity he could take advantage of at a premium date. See *American National Ins. Co.* v. *Brown,* supra. The company did not communicate with the insured until August 30, 1934, at which time it notified him that he had allowed his policy to lapse and requested that he fill out and return with a premium remittance an enclosed application for reinstatement. On September 15, 1934, the insured sent a check for $22, and died on September 26, 1934. By a proper calculation the equity of $19.49 was sufficient to pay the premium to September 23, 1934, as will be hereinafter shown. The calculation made by the company was, as shown by the record, on a basis of the annual premium in the case of a person 76 years of age, the age of the insured at that time, whereas it should have been made, under the circumstances of the base, on the basis of an annual premium of $83.03 as applicable to the policy in question. $83.03 per year for $2500 of insurance would be .2276 cents cost per day. So, the loan value of $19.49 would pay the premium on the policy for 85 days, which is found by dividing $19.49 by .2276, that is, to September 23, 1934. Consequently, when, on September 15, 1934, the insured sent a quarterly premium of $22 the policy had not lapsed. This check was forwarded to the company at its home office in St. Louis, Missouri, and the check was cashed and the proceeds thereof retained until after the defendant had been notified of the death of the insured. Then, on October 5, 1934, the defendant sent its check to the plaintiff for the $22, which the plaintiff refused and returned to the defendant. The remittance of $22 by the insured, together with the equity of $19.49, was sufficient to keep the policy in force until December 23, 1934. The insured died on September 26, 1934, at a time when the policy was in force,

and the plaintiff was entitled to recover the face value of the policy less any existing indebtedness of the insured. The court did not err in rendering judgment for the plaintiff, and in overruling the defendant's motion for new trial.

*Judgment affirmed. Stephens, P. J., concurs.*

FELTON, J., dissenting. Construing the petition most strongly against the plaintiff I am of the opinion that the suit was predicated on the theory that the policy had admittedly lapsed, but that the company should be estopped from so contending for the reason that when it applied the reserve value to the purchase of extended insurance at the attained age of the insured, in exact accordance with the terms of the policy, it failed to notify the insured as to what time the extended insurance covered. This contention is wholly untenable because if the policy had lapsed and the extended insurance applied, the insured could not by the payment of an additional premium keep the policy in force as it was originally. Notice to him of how much extended insurance he had would not have benefited him in any way so far as the right to keep the policy in force was concerned, and he had notice that the policy had lapsed and was given the opportunity to reinstate it on proof of insurability. The contention that the extended insurance was applied voluntarily by the company and that it was not required by the policy would furnish no ground for estoppel. If the company wrongfully used the insured's money to pay for extended insurance the insured could ratify what it had done as his agent and stand on it, but he could not claim that the company should have otherwise applied the money, or given him more insurance, or insurance for a longer time, and then ratify what he contended should have been done when there was no contract of the company obligating it to do what the insured or beneficiary contends should have been done. The interpretation above placed on the petition is not the one adopted by the majority opinion, but it is the true one in my opinion, and the demurrer to the petition should have been sustained.

The next question is whether the court's decision is correct, construing the petition as the majority have construed it. The construction they put on the petition, as I understand it from the opinion, is that the policy did not lapse because the automatic premium clause had been applied to keep the insurance in force, and

that since the policy had been kept in force automatically the company owed the insured the duty to advise him, before the policy lapsed, that when the next quarterly premium became due he would not have enough reserve to carry it another quarter.

The policy sued on provided that it would lapse upon the expiration of a grace period after a premium became due and was not paid *without affirmative action by the company.* The automatic premium provision would not go into effect unless there was enough reserve to pay at least a quarterly premium. I do not think the proposition will be questioned that where an insured, under such a policy, fails to pay a premium when due, and there is not enough reserve to pay a quarterly premium, the policy lapses without the company's being required to notify the insured that there was not enough reserve to pay the required premium under the automatic premium clause, or to notify him how much the reserve lacked of being sufficient to pay a premium, where the insured had not previously obtained the benefit of the automatic premium provision. This is true because the policy provides that it shall lapse if the premium is not paid, and because the company has the right to assume that the insured will pay the premium without using the reserve and that he will make inquiry rather than risk losing his policy. Notice as to when premiums are due is provided by the terms of the policy, and the insured knows when they are due as well as the company.

The question whether, when a series of premiums have been paid by the operation of the automatic premium clause, uninterrupted by the payment of a premium by an insured out of other funds, the company owes the insured the duty to notify him when the reserve falls below the amount required to pay a premium in time to enable him to pay in enough to meet the next accruing premium if he desires, is a troublesome question and the answer is by no means easy. It seems to me that the operation of the automatic premium provision is not a continuous operation. The operation is periodic. Each is separate and distinct. Each has a definite beginning and a definite end. The insured has notice when the next premium is due when the automatic clause has operated to pay the premium for a quarter. He is on notice that unless the next quarterly premium is paid his policy will lapse under its terms if not timely paid by him and the reserve is insufficient to pay it. It

would seem that the insured is not entitled to a notice where an unbroken series of premiums are paid under the automatic clause, any more than he is where he fails to pay the premium and the reserve is insufficient to pay it in a first instance. If the automatic premium clause in the policy sued on were not one which operated periodically, each operation a separate and distinct one, I would conclude otherwise. I can see no distinction between the two instances I have discussed in view of the explicit terms of the policy. The course of conduct, required by the contract, in the performance of a contract, can not form the basis of an estoppel under the facts of this case, if it ever can. Much has been said in the briefs about the *Brown* and *Cooper* cases cited in the majority opinion. My view is that these cases are not authority for the majority ruling in this case. In those cases the automatic clause had actually attached, and had begun to operate during the premium period for which the full premium had not been paid. The insured had insurance under the policy as first written. It was not extended insurance purchased by a reserve. Under the facts of those cases there was no knowledge on the insured's part that the policy by its terms would lapse at a definite premium paying period stated in the policy. The operation of the automatic clause had created a new situation in which the company was in better position to know when the policy expired than was the insured, and the requirement of the notice did not contravene the provisions of the policy as to forfeiture because the operation of the automatic clause had superseded them and rendered them inapplicable. In those cases the automatic clause began to operate, and kept the policy in force beyond the premium paying period for a period of time unknown to the insured. So long as the clause operated the insured had the right to pay an additional sum as premium to finish out the period, the premium payment period during which the clause was operating, and keep the policy in force without evidence of insurability. Such is not the case with extended insurance. In the instant case the automatic clause was not operative during the quarter when the reserve was insufficient to pay the quarter's premium, and under the terms of the policy it lapsed. Under the extended insurance granted by the company the insured had no right to pay a premium and keep the policy in force without evidence of insurability. This he did not furnish.

I do not think this court is authorized to decide the case otherwise than as made out by the petition. The petition admits that the $19.49 reserve was applied to the purchase of extended insurance. This was at the attained age of the insured. Of course, if the policy had not lapsed because the insured was not notified that his reserve was not sufficient to pay a quarter's premium, then it was immaterial whether the $19.49 was applied as premium or for any other purpose. The application of the $22.00 check sent in by the insured later would also be immaterial if the policy was in force anyway because of lack of notice. The vital question, and only question involved, in my opinion, is whether the policy lapsed when the quarterly premium due June 29, 1934, was not paid within thirty days from that date. Under the terms of the policy I think it lapsed. I dissent from the judgment.