30835. PROGRESSIVE FIRE INSURANCE COMPANY *v.* MORRISON.

474

DECIDED MAY 16. 1945.

476

*Hardin & McCamy,* for plaintiff in error.

*R. Carter Pittman,* contra.

GARDNER, J. ■ From the record set forth above the question here is whether the policy sued upon was of force on the date of the fire. In determining this question it depends, not so much on a calculation as to whether the premiums had been paid within the grace period as the plaintiff's evidence tends tð show, but whether or not the defendant by its conduct is estopped from contending that they were not paid and that the policy was not of force on the date of the fire. If the policy was not of force because it had lapsed for the nonpayment of premiums on November 8, 1943, it is undisputed that the money order for the premium of November 21st was cashed under the official direction of the president of the defendant company and the policy thus revived. From his own testimony he knew—certainly from the records of the company—that L. F. Morrison had no life-insurance policy. The premium payment was forwarded to the agency of the company at Dalton, Georgia, in a self-addressed, stamped envelope furnished by the company for the very purpose of having its policy holders make remittances. The president directed the affairs of the two companies, Progressive Life Insurance Company and Progressive Fire Insurance Company, affiliated companies. Should the policy holder in this instance be chargeable with the misplacement of this premium, mailed to the life-insurance branch of the company? All of the mail went into the same office; the books were kept in the same safe; the money was deposited and expended with the knowledge' and under the direction of the president as he walked from one desk to the other, in the same room. Each company paid half of the president's salary, as well as half of the salaries of the other employees of the companies. We deem it inescapable that the November payment, as a matter of fact and of law under this record, must be considered as a payment made by the insured to the insurer, Progressive Fire Insurance Company. Moreover, more than a month thereafter, on January 11th, the defendant received another two-months payment in the form of a post-office money order. This money order for premium payment was cashed under the direction of the president of the company and deposited in its

funds, according to the president's own testimony, on January 16, 1944. It is true that his explanation is that it was marked on the books of Progressive Fire Insurance Company in the suspension fund awaiting an application for reinstatement. Yet, according to the company's own records at Dalton, Georgia, the policy had lapsed on November 8, 1943. Just how long was this item to be held in suspension? No word or notice of any kind was given the insured that the policy had lapsed for nonpayment of the premium. No opportunity was given to procure insurance elsewhere from November 8, 1943, nearly two months before the fire, and until the date of the fire, January 20, 1944, yet two premiums of two months each had been received and deposited, one on November 29, 1943, and another on January 16, 1944, the latter six days before the fire, the former nearly two months. We are speaking now of the dates, not when the agency at Dalton received the remittances, but the dates when the defendant actually received the money. Moreover it appears that the tender of the premiums paid was not made by the defendant to the plaintiff for approximately four months after the fire. There appears no sufficient reason why the insurer should not have notified the insured in some manner of the lapse of his policy, either through the Dalton agency or the home office in Atlanta, or have returned the money orders to him, or have notified him that the remittance was being held pending an application for reinstatement.

In our opinion this case is controlled in principle by *German American Mutual Life Assn.* v. *Farley*, 102 *Ga.* 720, 743 (29 S. E. 615), wherein the court said: "In the present case, an offer of restitution of premiums was made by the plea of the defendant, but the difficulty with this offer of restitution is that it came too late. The reception by it of the premiums which the contract required the assured to pay, with knowledge that false representations had been made in order to induce the contract, was an approval, in law, of the contract thus made, and operated as an estoppel upon the insurer thereafter to insist upon the invalidity of the policy. To allow it now to recede from its contract would be to permit it, during the lifetime of the assured, to lead him to believe that he was in fact insured, and receive his money, taking the chances of his surviving the life of the policy. Had it rescinded or repudi-

ated the contract when its president discovered the false representations, assuming that under the facts it would have had the right of repudiation, the assured might have taken the precaution to have procured elsewhere insurance upon his life; and to allow it, at this late day, to escape liability upon such a pretext would operate as a gross fraud upon the assured. The law will not presume that the insurer intended to perpetrate a fraud; but will rather presume, in favor of innocence of an evil intent, that when it failed to notify the assured of its purpose to repudiate the agreement, it intended to waive any breach of the warranty which might have occurred in consequence of the representations made in the application." In our opinion the acceptance of the premiums and placing the money in the general funds of the defendant amounted to such an unconditional acceptance as to estop the defendant to contend that the policy was not in force at the date of the fire. See in this connection *Kelley* v. *Carolina Life Ins. Co.,* 48 *Ga. App.* 106 (171 S. E. 847), wherein it is said: "While an insurance agent is without authority to bind his principal by any waiver of the terms of the policy after a forfeiture has already taken place (*Finleyson* v. *Liverpool &c. Ins. Co.,* 16 *Ga. App.* 53, 84 S. E. 311; *Volunteer State Life Ins. Co.* v. *McGinnis,* 29 *Ga. App.* 370, 374, 115 S. E. 287), yet a forfeiture of the policy for nonpayment of a premium when due is waived by an unconditional acceptance of payment of the premium by the principal after such default. *Georgia Masonic Mutual Life Ins. Co.* v. *Gibson,* 52 *Ga.* 640; *German &c. Life Ins. Assn.* v. *Farley,* 102 *Ga.* 720 (3) (29 S. E. 615); *Neal* v. *Gray,* 124 *Ga.* 510 (52 S. E. 622); 32 C. J., §§ 625, 628." See also *Causey* v. *Gulf Life Insurance Co.,* 62 *Ga. App.* 378, 380 (8 S. E. 2d, 535), where it is said that, "The general rule is that an insurer which receives, accepts, and retains past-due premiums, assessments, or dues, paid subsequent to the due date and the expiration of the days of grace, if any, renews the contract and waives the forfeiture for nonpayment, provided such acceptance is unconditional and the facts are known, since an insurer which accepts past-due premiums or assessments, in violation of its own regulations, can not invoke the same in order to avoid liability."

■ Counsel for the defendant cite us to the case of *Plumer* v. *Continental Casualty Co.,* 12 *Ga. App.* 594 (77 S. E. 917). The facts of that case are so different from the case at bar that we can

not discern its application. In the case at bar the defendant, the principal, through its president, had knowledge of the facts. Also, as to *Union Central Life Ins. Co.* v. *Merrell,* 52 *Ga. App.* 831 (184 S. E. 655). In the *Merrell* case the company furnished receipts to the agent and he received the premium from the policyholder and issued an unconditional receipt. The court held that this bound the principal, since they received the premium and by way of explanation said that if the receipt had brought home to the insured that it was only a suspense payment, then the company would not have been bound. In the instant case there was no receipt of any kind issued to the insured. According to her testimony her receipt book was not returned by the agent at Dalton, to whom she mailed it, and the post-office money order for the payment was forwarded to the home office, where it was cashed and deposited in the general funds of the company; and the testimony as to a suspense payment was that it was a mere entry on the books of the company, under the direction of the president, at the home office. Again, counsel for the defendant cite us to *Rome Industrial Insurance Co.* v. *Eidson,* 138 *Ga.* 592 (75 S. E. 657), and *New York Life Insurance Co.* v. *Patten,* 151 *Ga.* 185 (106 S. E. 183). Both of those cases dealt with the limitations on the authority of an agent, and as above stated, that question is not here involved. We are dealing with the conduct of the principal who had the authority to subject the defendant to such conduct as would estop it.

In conclusion, we may take an overall summary of the facts: The insurance was procured on March 22, 1943, through the Dalton agency, the insured living at LaFayette, Georgia. The premiums were paid by the insured in person to the agents of the Dalton agency until the following June. Then the insured went to Detroit to work. The agent then furnished stamped, addressed envelopes to the wife of the insured for the purpose of mailing the remittances to the agency in Dalton, Georgia. She admittedly did this sufficiently to carry the policy until November 8th, which date included the grace period. Then the records of the agency at Dalton show the policy was lapsed for nonpayment of premiums on this date. The insured's evidence shows the policy was not lapsed, for the premiums had been paid. Thereafter, on November 21, the wife of the insured mailed a post-office money order for the November and December premiums to the agency at Dalton, in an

envelope .furnished by the agency and directed to the Progressive Life Insurance Company there. The insured did not have a life policy. Like the home office, the personnel of the agency at Dalton attended to the affairs of both affiliates. Notwithstanding the fact that the agency's records showed that the policy of the insured had been lapsed on November 8th, and that the records showed the absence of a life-insurance policy, the post-office money order was sent to the home office, and the receipt book returned to the wife of the insured (according to her. testimony), and was properly credited. The home office cashed the money order and placed the proceeds to the general funds of the life affiliate on November 29, 1943. It was interned as a foreign payment. The president testified it was the same as if a stranger had made a payment. Thereafter, on January 11, the wife of the insured, having no knowledge or information as to the fate of the November 21 payment, forwarded to the Dalton agency another post-office money order for the December and January premiums, together with the receipt book. This was sent to the fire-insurance affiliate. The receipt book was never returned to her. The money order was forwarded by the agency to the home office, where it was cashed on January 16, 1944, and deposited to the general funds of the defendant, and a book entry "suspension" was made, awaiting, the president testified, for a revival application. ·

Under this situation, the court did not err in overruling the motion for a new trial.

*Judgment affirmed. Broyles, C. J., and Parker, J., concur.*