GRANT, for use, *vs.* THE ALABAMA GOLD LIFE INSURANCE COMPANY.

[This case was argued at the last term, and the decision reserved.]

1. Where notice was served on an insurance company, which was defendant in a case, to produce all the records of its dealings in Georgia, and the defendant furnished a transcript of its dealings with the plaintiff, under §3517 of the Code, this was sufficient. If the plaintiff was dissatisfied, he had a remedy under §3518, and any entry bearing on the case could have been transcribed; but the furnishing of the transcript stated gave no ground for a judgment against the defendant, nor for a judgment *non obstante veredicto* after verdict.

2. If a policy of life insurance be assigned as collateral security for a loan, whether the assignment be to the company issuing the policy or to a third person, the duty of keeping the collateral alive by paying the premiums required rests on the insured; and when, in defence to a suit on a policy, the company set up that such policy had been assigned to it as a collateral security for a loan, after a verdict for the defendant, this furnished no ground for a judgment *non obstante veredicto*, on behalf of the plaintiff for the amount of premiums paid.

3. There was no error in admitting interrogatories.

4. While the custom and usage of an insurance company in giving personal notice to the holder of a life policy as to premiums falling due became, if not part of the contract, yet such an incident to it or so incorporated in the spirit of the dealings as to require the company to keep it up, or to give notice before substituting therefor notice by mail from another state, yet the insured must act with reasonable diligence, and a delay of six months or more in paying a premium for want of notice was so unreasonable as to show a purpose to abandon the policy and let it lapse, and if a jury should decide otherwise, their verdict would not stand.

(a.) Reasonable time in such cases considered. .

5. The principles touching the main issue in this case are as follows:

(a.) In respect to notice, as to all other dealings between parties, custom and usage followed for some time in the intercourse between them, if suddenly changed, is well calculated to operate as a fraud upon those confiding in it, by inducing them not to hold in memory the exact day a thing should be done, because of the habit of the intercourse between the parties for notice to be given of that day.

(b.) The rule should be rigidly applied where the result of not coming up to the exact date works a forfeiture of all past payments as well as of the entire contract.

(c.) In this state, where life insurance companies deal with the assured for a time sufficient to make it their usage and custom to give notice to the assured of the date when the premiums fall due, and fail to give notice thereof, the policy will not be forfeited, if, within a period so reasonably short as to show an intent to continue his policy, the assured take steps to inquire and pay the premium.

March 23, 1886.

Contracts.   Notice.   Insurance.   Pawns.   Evidence.
Time.   Before Judge Adams.   Chatham Superior Court.
June Term, 1885.

On December 17, 1883, Grant sued out an attachment against the Alabama Gold Life Insurance Company for $3,500.   The declaration in attachment, as amended, contained four counts, setting forth plaintiff's claim as follows: (1.) Because the defendant had refused to give to the plaintiff a paid-up policy upon his life; (2) for money had and received; (3) because the defendant refused to pay the loss by death upon a policy upon the life of John W. Taylor, assigned to the plaintiff; and (4) because the defendant refused to perform its contract of insurance with the plaintiff.

The defendant pleaded the general issue; that the policies were void for non-payment of premiums; that no applications for paid-up policies were made within three months from the time of the respective lapses; that proof of death of Taylor and of plaintiff's interest in that policy

was never made; and that plaintiff assigned his own policy to defendant as security for a debt.

On the trial, the evidence showed, in brief, the following facts: On April 15, 1874, Grant obtained a policy on his life from defendant, which he transferred to the latter to secure a debt due to it. On December 30, 1876, a policy was issued on the life of John W. Taylor, which was transferred to Grant as security for a debt. Grant was solicited to take out his policy by the company, which, while chartered elsewhere, had a local office and agent at Savannah, and was assured by the agent that the company was a home institution, located in Savannah, and that he could pay his premiums there. Each policy contained a clause providing that it should be void if the assured should not pay the premiums on or before the date mentioned for the payment thereof and the interest annually on all credits for premiums, until the same should be fully paid up; also that, when all premiums should have been paid for three years or longer, and any subsequent premium should have become due and should not be paid, a paid-up or nonparticipating policy would be issued for an equitable amount, to be determined according to certain stated rules, provided the original policy should be surrendered and application be made for a paid-up policy within three months from the expiration of the time for which all the premiums had been paid; otherwise, the policy should become null and void. Still further, that if the policy should become void, all payments made thereon should be forfeited to the company. The premiums on Grant's policy were payable half in cash and half by note due at six months. In 1879, the company withdrew its agencies from Georgia. Up to that time, notice of the maturity of premiums and premium notes had been sent to Grant through the agent in Savannah, and he had paid his premiums to that agent. In December, 1880, a premium on the Taylor policy fell due and was passed. No notice was received by Grant, and

nothing transpired to call his attention to it. In the April following, he paid the premium on his own policy as usual, and gave his premium note due October 15, 1881. When that note fell due, no notice was received by him of maturity, and it remained unpaid. On May 15, 1882, while looking up some insurance matters, it occurred to him that his own premium might be due, and he wrote to the company (whose principal office was at Mobile, Ala.), sending his check and asking whether the Taylor premium was due. He received in reply a note, returning the check and stating that both premiums were overdue and the policies forfeited, his own for failure to pay the note due October 15, 1881, and that of Taylor for non-payment of premium due December, 30, 1880. He protested against this, but the company refused to recognize his right to continue either policy.

The defendant introduced testimony to show that notice had been mailed to Grant from Mobile.

The jury found for the defendant. The plaintiff moved for a new trial, on the following among numerous other grounds:

(1.) Because the court refused to render a judgment by default in favor of the plaintiff for the following reason: Plaintiff served a notice on defendant to produce its books showing its transactions in reference to policies in Georgia during a time therein mentioned. In response, the defendant produced a sworn transcript from its books, showing its transactions with reference to these policies, but not to others. After verdict, a motion for judgment *non obstante veredicto* was made on the same ground and overruled.

(2.) Because the court failed to instruct the jury that, if they found from the evidence that the defendant's seventh plea was true in fact, they must find a verdict for the plaintiff in the sum of all premiums paid by H. Fraser Grant to the defendant upon his own policy since the date of the transfer to the defendant. [The plea referred to,

set up that, on December 16, 1874, the plaintiff assigned his policy to the defendant as a collateral security, and that defendant still held the same. A motion to enter judgment *non obstante veredicto* was made after verdict, on the ground that it was required by this plea. The motion was refused.]

(3.) Because the court admitted in evidence the depositions of T. N. Fowler, a witness for the defendant, over the objection of the plaintiff, on the ground that the commissioners did not certify where the evidence was taken. [The caption at the beginning of the answers states that they were taken at Mobile, Alabama.]

(4.) Because the court charged the jury as follows: "To authorize the plaintiff to recover, he must show that the failure to pay premium and premium-note upon the part of Mr. Grant was caused by default of the company, and that Grant himself was without fault. If you find that the company had been in the habit of giving notice to Mr. Grant of the maturity of premiums, and that, when the premiums upon these policies fell due, the company failed to give such notice, and that Mr. Grant thereby failed to pay said premiums upon his own and Taylor's policies, and was without fault himself in ascertaining the time of such payment, and that the company refused to comply with the terms of the policies, then you will find for the plaintiff in the amount of the entire premiums paid by Mr. Grant, with interest to the present time, and in the amount of the indebtedness to him of Taylor, not to exceed the amount of the Taylor policy, with interest. If you find from the evidence that the company mailed the usual notice of the maturity of premium and premium-notes at the post-office in Mobile, this was in full compliance with their duty, whether Grant received it or not; or if you find that Mr. Grant was negligent in ascertaining the maturity of his premiums and at fault himself. you must find for the defendant."

(5.) Because the court refused to charge as follows: "If

they find from the evidence that the plaintiff, prior to the time of his failure to pay his premium upon the policy, and also upon Taylor's policy, had always received notice of the maturity of premiums on the said policies from the defendant, then the defendant could not vary that usage by not giving such actual notice, without express notification to the plaintiff that thereafter he would not receive such notice; and if you find from the evidence that the failure of the plaintiff to pay the premiums on said policies was caused by a failure of the defendant to give such actual notice, and that such a usage to give actual notice had existed previously, and that no notification of intention to stop the same had been given, then no forfeiture of the policies would occur by reason of such failure to make payments, provided you further find that the plaintiff exercised reasonable diligence in tendering the premiums to the defendant after he ascertained that the same were due; but the defendant was bound to receive said premiums, and to retain the said policies in full force, if the plaintiff exercised such reasonable diligence in offering pay."

The motion was overruled, and the plaintiff excepted.

CHARLES N. WEST; N. H. McLAWS, for plaintiff in error

JOHN M. GUERARD, for defendant.

JACKSON, Chief Justice.

Grant, for the use of Sheldon, brought suit against the Alabama Gold Life Insurance Company for the recovery of two policies of insurance, one on the life of Grant, for refusal to give a paid-up policy thereon, and the other for refusing to pay loss, on the death of Taylor, for insurance on his life by Grant. The jury found for defendant, a new trial was denied, and the case is here for review.

1. The books of the company were required by notice extending to all dealings in Georgia. A transcript of dealings between plaintiff and the company was furnished,

under section 3517 of the Code; whereupon the plaintiff moved for judgment, and after verdict repeated the motion for judgment *non obstante veredicto*. The motion was refused, and this is assigned as error.

We fail to see the error. It was a notice under the statute; the defendant responded by a transcript under the statute; and literally it is enough. Certainly it would be very harsh to render judgment against a party for following the statute, in answer to a statutory notice to produce books. The plaintiff was not without remedy prescribed by statute in the next section of the Code (section 3518), which provides for a commission to examine the books and make a full transcript. True that, too, refers only to dealings in the books between plaintiff and defendant; but the court, if it saw other transcripts were material, might well invoke the spirit of the statute, and would doubtless have done so, and directed the commission to transcribe everything relevant to the case. Thus nobody would be hurt, and complete justice be done.

2. Another motion was made for judgment *non obstante veredicto* because of a plea of defendant which set up, in objection to a recovery on the Grant policy, that it had been assigned to the company as collateral for a loan to Grant, and it is insisted that, if plaintiff could not recover thereon, then he was entitled to judgment on the premiums he had paid, notwithstanding the verdict.

We do not think he was so entitled. If his policy had been transferred to a third person, the premiums must be continuously paid, to prevent lapse and ferfeiture. If transferred for collateral security to a third person, the same thing must be done; why not, if transferred as collateral, to the defendant company itself? If the company discharged its full duty in respect to the policy, notice pursuant to usage, and everything else necessary to bind the plaintiff, why should not the plaintiff keep alive this collateral with the company to secure them as well as others?

It would be manifestly unjust to give a security, kill it by failure to keep it alive by feeding it, and then claim a judgment overriding the verdict of the jury for the result of his own wrong. It would be to recover all the premiums already paid by violating the contract to pay more, unless, by three months' notice for a paid-up policy under the contract, he had entitled himself to insure no longer.

If there be any black letter law of technical pleading and its result technically, which would authorize such a consequence, it is time to stop it. We are not aware of any such.

3. There was no error in admitting interrogatories.

4. Under the facts disclosed by this record, we think that the unreasonable delay of the plaintiff, the sleep over his rights, so deep that many months after both policies had lapsed he had not awaked, in one case over a year, some fifteen months, as I remember now, and in the other not perhaps a full year, but more than half of it—so deep that it may be inferred that only Taylor's death awoke him—that this unexplained and continued neglect on his own part will always prevent a recovery in this case on the merits thereof. While, in our judgment of the law, hardly an open question in this court, the custom and usage in respect to personal notice to the plaintiff by the agent in Savannah became, if not an actual part of the contract between Grant and the company, yet such an incident thereto, and so incorporated into the spirit of their dealings, as to require the company to keep it up or to give notice thereof to Grant, before substituting for it notice by mail from another state ; yet the insured must act with reasonable diligence, and six months' delay to pay a premium for want of notice appears to us so unreasonable as to show a purpose to abandon the policy and let it lapse ; and if a jury should decide that such was reasonable, the court should not permit the verdict to stand. Two or three months in a policy of annual premiums, a month or six weeks in semi-annual premiums, is time enough for

one who has his life insured, though notice does not come to him from the company according to usage, to bestir himself to ascertain why the notice has not come, and not to do so within such reasonable time, without some over-powering providential cause, ought to conclude him, upon the idea that he had himself declined further to keep insured, or had so slept that the maxim, "*Non dormientibus sed vigilantibus lex servat*" applies. Irrespective, therefore, of any charge or ruling of the court upon the main issues in the case, we think the verdict right, and that the court below, therefore, did right in overruling the motion for a new trial.

5. The principle of law touching the main issue, however, we think it well to announce, so far as the law of this state, in our judgment, fixes it.

(*a*.) In respect to notice, as to all other dealings between parties, custom and usuage followed for sometime in the intercourse between them, if suddenly changed, is well calculated to operate as a fraud upon those confiding in it, by inducing them not to hold in memory the exact day a thing should be done, because of the habit of the intercourse between parties for notice to be given of that day.

(*b*.) The rule should be rigidly applied where the result of not coming up to the exact date works a forfeiture of all past payments as well as of the entire contract.

(*c*.) In this state, where life insurance companies deal with the assured for time sufficient to make it their usage and custom to give notice to the assured of the date when premiums fall due, and fail to give notice thereof, the policy will not be forfeited, if, within a period so reasonably short as to show an intent to continue his policy, the assured take steps to inquire and pay the premium. Code, §§1, sub-sec. 4, 2070, 2648, 3805; 62 *Ga.*, 247; *Ala. Gold Ins. Co. vs. Garmany*, 74 *Ga.*, 51.

In Ins. Co. *vs.* Eggleston, 96 U. S. R., 572, the United States Supreme Court put itself on the same general line, though afterwards, in Thompson *vs.* Ins. Co., in 104 U. S.

R., 252, that court, distinguishing the case from Ins. Co. *vs.* Eggleston, does not apply the principle to notice of the date of payment of premiums.   We do not see the principle on which custom and usage in any other material matter will, if suddenly stopped, prevent a forfeiture, and yet, in respect to notice, though just as long and fixed, of time to pay the premiums, it will not have the same effect.   The lulling to sleep is just the same, the opportunity to commit fraud the same, the abhorrence of the law to forfeiture the same, and the spirit and reason of the law, so far as we see it, just the same.   The notice to what agent the assured should pay, and failure to give it, prevented the forfeiture in Eggleston's case, because the habit and usage were to give that notice; the failure to give any notice at all, though in the habit and usage of doing so for years, did not prevent forfeiture in Thompson's case.   In neither case did the contract require notice; in Eggleston's, none to designate the agent was required; in Thompson, none to give notice of date of payment.   Both cases stood on usage outside of contract; and the principle that usage enters into, or shapes afterwards, the mode of carrying out the contract, especially to avoid forfeiture, when too nobody is badly hurt, but only a little time lost, it seems to us, covers both.   In Thompson's case, however, the premium was never paid or tendered, and that showed that the insurance company was hurt.   And there the case really turned.   See also 106 U. S. R., p. 36.

Be that, however, as it may, we adhere to the spirit of the Georgia Code, and what we consider the reason and spirit of a great principle; and so lay down the law in this state as indicated heretofore in the cases cited.

This judgment is affirmed because the plaintiff slept too long.

Judgment affirmed.