### 37155. FORRESTER *v.* STATE FARM MUTUAL INSURANCE COMPANY.

TOWNSEND, Judge. 1. It is not error to direct a verdict in favor of the defendant where the undisputed evidence with all reasonable deductions therefrom demands the conclusion that the plaintiff is not entitled to recover. *Rupek* v. *Pig'n Whistle, Inc.,* 94 *Ga. App.* 404 (1) (94 S. E. 2d 747); *Roberts* v. *Maxwell,* 94 *Ga. App.* 406 (94 S. E. 2d 764).

2. "The punctual payment of insurance premiums, as and when due, is of the essence of the contract of insurance, and a failure to make such payment in strict compliance with the terms of the contract, in the absence of a waiver expressly made, or arising by reasonable implication, results in a forfeiture of the policy." *Plumer* v. *Continental Casualty Co.,* 12 *Ga. App.* 594 (1) (77 S. E. 917). In that case the policy contained the following stipulation: "The whole policy continues in effect as long as the premiums shall be paid as agreed in the application therefor." The insurance policy in the present case contains similar provisions as follows: "The policy period shall be as shown above under 'Policy Period' and for such succeeding periods of six months each thereafter as the required renewal premium is paid by the insured on or before the expiration of the current policy period and accepted by the company. [The period shown above was from February 1, 1955, to February 1, 1957]. . . This policy applies only to accidents which occur, during the policy period. . . In the event of valid loss sustained under coverages D, E, F, G or H of this policy [coverages D and G being involved] while the insured was not in default, the amount of the loss shall be first applied in payment of any balance owing to the company for the policy term and the remainder shall be paid to the insured." It accordingly appears that here, as in the *Plumer* case, at the end of the term for which the insurance has been taken out, where no renewal is made on or before that date, the insurance automatically expires. Under the last quoted sentence there is also provision for insurance to be taken for a stipulated term not paid for in advance, and in such event the insurance would be in force but the insured would owe a debt to the company in the amount of the unpaid balance of the term. That the rule in the *Plumer* case has

also been applied to life insurance contracts which are frequently construed as continuing contracts, dependent upon fulfillment of the obligation, rather than as limited contracts which automatically cease upon the expiration of the term unless renewed, see also *Illinois Life Ins. Co*. v. *McKay,* 6 *Ga. App.* 285 (1) (64 S. E. 1131); *Praetorians* v. *Cowart,* 50 *Ga. App.* 124 (177 S. E. 89); *Pope* v. *Improved Order of Samaritans,* 61 *Ga. App*. 366 (2) (6 S. E. 2d 159). The policy of collision insurance automatically expired at the end of its term (February 1, 1957) when no offer to renew by payment of premium was made by the insured and there was no notice of intention to renew the policy nor any agreement between the parties that the policy might be renewed in any other way, and the policy itself contained no grace period.

3. While an insurance company which by a course of dealing leads an insured to rely upon notice from the company as to the due date of premium payments is estopped to complain of a late payment caused by its failure to give such notice in a particular instance (in which connection see *Grant* v. *Alabama Gold Life Ins. Co.,* 76 *Ga.* 575), no such course of dealing, and no universal custom to give notice, is shown in this case. The plaintiff here had no dealings with this defendant except as to this policy and a liability insurance policy, both of which were arranged and paid for in advance by a lending institution out of the proceeds of a loan procured when the plaintiff purchased the automobile in question and constituted protection primarily to the lender.

4. The plaintiff alleged in her petition that her policy period expired on February 1, 1957, but that she was unaware of this fact; that on February 18, 1957, she had a collision which reduced the value of the automobile to salvage and on the same day she informed the local office of her loss but was informed that she had no insurance coverage; that on February 19, she sent a money order in the amount of the six-month renewal premium (February 1, to August 1, 1957) to the home office of the defendant in Jacksonville; that it received and retained the amount and so notified the plaintiff by mailing her a premium receipt to this effect. The proof differed from the pleadings in that it appeared that the money order was mailed on February 21, and no receipt as alleged was ever forwarded the plaintiff, but in April the defendant forwarded the

plaintiff a check for $2.19 as an "out-of-force" rebate from February 1, the expiration date of the policy to February 21, the date of the next payment, accepting coverage prospectively from February 21, to August 1, 1957. Had the defendant accepted and retained the whole premium it would undoubtedly be liable, since the coverage would be retrospective. See *Winder National Bank* v. *Aetna Life Ins. Co.,* 36 *Ga. App.* 703 (2) (137 S. E. 848); *Willis* v. *Sovereign Camp, W.O.W.,* 29 *Ga. App.* 470 (116 S. E. 52). On the other hand, had the policy contained any express condition that there was no coverage between the date of default and reinstatement, the coverage would have been prospective and the plaintiff not covered for the loss, as held in *Plumer* v. *Continental Casualty Co.,* 12 *Ga. App.* 594, supra. Neither situation is entirely applicable here. Since, however, the policy had lapsed according to its terms, it is obvious that there was no obligation upon the defendant to accept the premium, and the defendant did not in fact unconditionally accept the premium nor did it accept it in the manner alleged in the plaintiff's petition.

5. Code § 56-818 provides as follows: "If the loss shall have already occurred, and both parties shall be ignorant of it, the contract is valid; but the slightest grounds of suspicion known to the insured shall vitiate the contract unless made known to the insurer." The evidence in this case demands a finding that the plaintiff, knowing of the loss, reported it to the local agent but did not there attempt to renew or revive her insurance, and that she attempted to reinstate her insurance with the home office but did not inform it of the loss. Under these circumstances, the act of the insurance company in accepting the renewal premium insofar as it might give it prospective effect, but in refusing it insofar as the effect would be retrospective to cover the time between expiration and payment cannot be held such a waiver on the part of the company as to constitute a reinstatement of the policy during the time in which the loss occurred. This the company specifically refused to do, and had no obligation to do. It was accordingly proper to direct a verdict in favor of the defendant.

The trial court did not err in denying the motion for new trial.
*Judgment affirmed. Gardner, P. J., and Carlisle, J., concur.*

DECIDED MAY 13, 1958.

*Jake B. Joel, Gary L. Pleger,* for plaintiff in error.

*Erwin, Nix, Birchmore & Epting, Eugene A. Epting,* contra.

Mrs. Jewell Forrester filed an action in the Superior Court of Clarke County against State Farm Mutual Insurance Company on a policy of collision insurance on a 1952 Chevrolet automobile owned by her, alleging that on February 1, 1955, the defendant issued her a policy of collision insurance for a period from that date to February 1, 1957; that the defendant had always notified the plaintiff by mail of the expiration dates of policy periods of similar insurance policies which she had previously purchased; that this conduct and custom of the defendant induced her to rely upon notice instead of keeping in mind the expiration dates of her policies; that such custom on the part of insurance companies is so universal as to be become by implication a part of the plaintiff's policy; that on February 18, 1957, she suffered a collision which totally wrecked the automobile; that she reported this to the branch office on the same day and for the first time discovered the policy was in default; that she at all times intended to keep the policy in full force and effect and that it was in full force and effect upon the date of the collision by reason of the fact that on February 19, 1957, she forwarded the defendant a money order in the full amount of the premium due which was accepted and retained by the defendant and applied said premium payment to the six-month period from February 1, 1957, to August 1, 1957, and so notified the plaintiff by mailing her a premium receipt to that effect, but that after this suit was filed on April 22, 1957, the defendant mailed the plaintiff a rebate of $2.19, and informed her they had decided to consider her policy as being in effect from February *21*, 1957, to August 1, 1957, but the plaintiff refused to accept this rebate and refused to consider the policy renewal as becoming effective on February 21, rather than February 1.

On the trial the undisputed evidence as to the renewal of the policy was as follows: The plaintiff notified her local agent on February 18 of the collision and was informed that her policy had expired. She did not offer a premium payment to the local agent but on February 21 mailed a money order to the home office in Jacksonville, Fla., and she did not inform the Jackson-

ville office of the wreck and destruction of the automobile. She received no acknowledgment from the Jacksonville office except the $2.19 rebate in April together with a receipt for insurance coverage dating from February 21 (the date of the money order) to August 1, 1957.

On the subject of the custom of the defendant in dealing with her, the evidence showed that the plaintiff had had no dealings with the defendant except for two policies required by the bank in financing the purchase of the Chevrolet in February, 1955: an automobile liability policy extending for six months, as to which she received a notice of expiration of term and let it lapse, and the collision policy in question which was paid in advance for two years; that both of these policies had been arranged and paid for out of the proceeds of the bank loan; that, as to policies with other companies there had been a policy on a previously owned automobile, a 1951 Chevrolet, also arranged for by the lending agency and paid for out of loan proceeds, and which the plaintiff had not renewed when the policy period expired, and that the plaintiff did not know of any insurance policy which she had either taken out or renewed except as required by a lending agency. The policy did not contain a provision for a grace period and no evidence was introduced as to the universal custom of insurance companies to give such notice.

At the close of the evidence the trial court directed a verdict in favor of the defendant. The plaintiff filed a motion for a new trial on the general grounds which was amended by the addition of one special ground complaining of the direction of the verdict, and the judgment denying this motion is assigned as error.