A96A0326. STATE FARM MUTUAL AUTOMOBILE INSURANCE
COMPANY v. DRURY.
(474 SE2d 64)

BEASLEY, Chief Judge.
State Farm appeals the denial of its motions for directed verdict and judgment notwithstanding the verdict, OCGA § 9-11-50 (a), after a jury verdict in Drury's favor.

Drury was involved in an automobile collision on the evening of November 7, 1989, and filed a claim for coverage. State Farm denied coverage on the ground that it had cancelled Drury's policy effective 12:01 a.m. that very day for non-payment of premium.

In August 1984, State Farm issued an automobile policy to Drury, who successively renewed the policy every six months. The policy period in question began July 27, 1989, and was to continue for six months through January 27, 1990. Drury had elected a premium payment plan whereby he was to pay half of the six-month premium in July and the other half in October, plus a $2 fee for splitting the premium. It was State Farm's practice to generate a notice when each payment was coming due. Drury did not make the July payment on time, and State Farm cancelled his policy on August 21, 1989. Nine days later, Drury made payment in the amount of $185.93, which represented half of the premium for that policy period, plus the $2 fee, and the policy was reinstated on August 30, 1989.

State Farm contends it generated and mailed the next premium due notice for the October payment on September 5, but Drury maintains he never saw this bill. State Farm received no payment for the October installment and issued a cancellation notice on October 25, 1989, specifying a cancellation date of November 7, 1989, at 12:01

a.m. Drury was not living at the address State Farm had on file at the time the notice of cancellation would have been delivered because he and his wife had separated on October 22, and he had not notified State Farm of the address change. Drury's estranged wife testified by deposition that she forwarded all of Drury's mail to him.

Drury's policy provided, "The coverages you chose apply to accidents and losses that take place during the policy period. The policy period is shown under 'Policy Period' on the declarations page and is for successive periods of six months each for which you pay the renewal premium. Payments must be made on or before the end of the current policy period. The policy period begins and ends at 12:01 A.M. Standard Time at the address shown on the declarations page." The declarations page is not in evidence.

1. A directed verdict is proper only where there is no conflict in the evidence as to any material issue and the evidence and all reasonable deductions or inferences therefrom demands a particular verdict. *Carden v. Burckhalter*, 214 Ga. App. 487 (1) (448 SE2d 251) (1994). The same is true for a motion for j.n.o.v. OCGA § 9-11-50 (a); *St. Mary's Hosp. &c. v. Cohen*, 216 Ga. App. 761 (1) (456 SE2d 79) (1995). The standard of review of a trial court's denial of a motion for a directed verdict is the "any evidence" standard, and the evidence is construed most favorably toward the party opposing the motion. *Mattox v. MARTA*, 200 Ga. App. 697 (1) (409 SE2d 267) (1991).

In order to create a presumption that the insured received the premium due notice, the law requires proof that the notice was placed in an envelope properly addressed to the insured's last known address, with correct postage affixed, and duly mailed in the United States Post Office. *Watkins Products v. England*, 123 Ga. App. 179, 181 (180 SE2d 265) (1971). State Farm offered no evidence that the September 5 notice was in fact so mailed, and thus it was not entitled to the benefit of the favorable presumption. *American Express &c. Co. v. Berlye*, 202 Ga. App. 358, 360 (2) (414 SE2d 499) (1991). The closest evidence was from the deposition of an operations supervisor for State Farm who was not present at trial, the following portion of which was read to the jury: "We generated a balance due [on Drury's policy] on September 1st, 1989. It would have been mailed September 5, 1989, because there was a long weekend involved that particular weekend. It would have been mailed the next working day, which was September 5th, 1989, and the balance due date was October 5th, 1989." This testimony does not prove that State Farm mailed the notice to Drury, or when. No witness testified from personal knowledge of such facts. *Nationwide Mut. Ins. Co. v. Barnes*, 108 Ga. App. 643 (134 SE2d 552) (1963). Nor did any properly admitted business record show it.

State Farm contends a "Premium History" for Drury's policy sub-

mitted into evidence is further proof that State Farm generated a September 1 notice and mailed it on September 5. Although State Farm never properly identified this document as a business record or made any attempt to lay a foundation for it, and it would have been properly excluded as hearsay under OCGA § 24-3-14, the trial court admitted it over Drury's objection. Nothing in the document suggests that a notice was generated or mailed, and neither September 1 nor 5 is mentioned.

Evidence of nonreceipt of the notice is admissible as a circumstance as to whether the notice was mailed. *New Amsterdam Cas. Co. v. Russell*, 102 Ga. App. 597, 601 (2) (117 SE2d 239) (1960). State Farm contends Drury gave equivocal testimony about receiving the premium balance due notice at issue, and thus the rule in *Prophecy Corp. v. Charles Rossignol, Inc.*, 256 Ga. 27, 28 (1) (343 SE2d 680) (1986), should apply: "[T]he testimony of a party who offers himself as a witness in his own behalf at trial ' "is to be construed most strongly against him when it is self-contradictory, vague or equivocal." ' [Cits.] Where the favorable portion of a party's self-contradictory testimony is the only evidence of his right to recover or of his defense, the opposing party is entitled to a directed verdict. [Cit.]" Id.

Two months after the accident, in response to questioning by a State Farm adjuster as to whether he received the premium notice, Drury had replied, "I never saw it, no." Drury responded to State Farm's questioning on cross-examination at trial that when he said during deposition he may have received the September notice, he was merely speculating. This statement could be regarded as contradictory or equivocal. But even applying the rule in *Prophecy Corp.*, the testimony that he might have received it does not establish that State Farm sent the notice by proof it was received.

Drury testified he had come to rely on the notices of previous balance due, regularly sent, to tell him when the premium was due. "[A]n insurance company which by a course of dealing leads an insured to rely upon notice from the company as to the due date of premium payments is estopped to complain of a late payment caused by its failure to give such notice in a particular instance." *Forrester v. State Farm Mut. Ins. Co.*, 97 Ga. App. 618, 619 (3) (103 SE2d 619) (1958), citing *Grant v. Alabama Gold Life Ins. Co.*, 76 Ga. 575, 583 (5) (c) (1886). The effect of the failure of the insurer to give notice precludes cancellation of the policy if the insured's premium payment is late. Id. at 583 (5) (b). "The rule should be rigidly applied where the result of not coming up to the exact date works a forfeiture of all past payments as well as of the entire contract." Id. Drury's policy was thus not cancelled as a matter of law at the time State Farm attempted to cancel it. Since State Farm submitted no conclusive evi-

dence it sent Drury the September premium balance due notice, the trial court did not err in denying State Farm's motion for a directed verdict on this issue or in refusing j.n.o.v.

2. Contrary to State Farm's contention, it was not error for the court to instruct the jury that "where an insurance company by a course of dealing leads an insured to rely upon notice from the company as to the due date of premium payments the company is estopped to complain of a late payment caused by its failure to give notice in a particular instance." The charge, taken from *Grant*, supra, and *Forrester*, supra, is a correct statement of the law and, as demonstrated in Division 1, is applicable.

3. State Farm contends that it presented uncontroverted evidence that it followed the requirements in OCGA §§ 33-24-44 and 33-24-45 for cancellation of the insurance policy with respect to the cancellation notice issued October 25, which was to be effective November 7. See *Bituminous Cas. Co. v. Renfroe*, 130 Ga. App. 621, 623 (1) (204 SE2d 317) (1974). But State Farm was not entitled to cancel the policy without first having given Drury notice that his premium payment was due. *Grant*, supra. Although similar to *Timely Entertainment Intl. v. State Farm &c. Co.*, 208 Ga. App. 467, 469 (430 SE2d 844) (1993), cited by State Farm, the case is distinguishable because those parties did not dispute that State Farm mailed the premium notice and that a premium due date had been established by custom and practice.

"[A]n insurance policy may be cancelled by the insurer for failure of the named insured to discharge 'when due' any of [his] obligations in connection with the payment of premiums for the policy." *Pennsylvania Nat. &c. Ins. Co. v. Person*, 164 Ga. App. 488, 489 (297 SE2d 80) (1982). In *Person*, the Court held: "[N]otice of cancellation was given before the premium was due. There was no reason to cancel the policy until after the premium became due and payable. Thus, the insured is entitled under statute to notice of cancellation for failure to pay [his] premium when due and at least a ten day grace period prior to the effective date of the cancellation. [Cit.]" (Emphasis omitted.) Id. at 489 (1). As in *Person*, the notice of cancellation was not given to Drury upon his failure to pay the premium "when due." State Farm could not declare the premium due without giving notice.[1]

State Farm urges that *Person* does not apply because the policy expired by its terms when Drury failed to pay the premium. Drury's obligation to pay was dependent on notice, and cancellation is dependent on nonpayment after notice. *Wheeler v. Standard Guaranty Ins.*

---

[1] Drury argues he was covered because of amounts he had previously paid. Each party disputes the other's arithmetic. We need not decide this issue since we find the policy was not cancelled as a matter of law.

*Co.*, 168 Ga. App. 565, 568 (309 SE2d 805) (1983). The October 25 notice of cancellation was ineffective because the premium was not yet "due." At most, it operated merely as a "demand for payment" in accordance with *Person*. "The notice requirements of the statutes regarding cancellation of insurance policies are mandatory and require strict compliance and failure to adhere to the requirements results in noncancellation of the policy." *Person*, supra at 490. The trial court did not err in denying State Farm's motion for a directed verdict on this issue.

4. State Farm contends the trial court erred in reading to the jury the following request to charge: "I charge you that a notice of cancellation which states that a policy will be cancelled on a specified date unless premiums due are paid prior to that date, is not a notice of cancellation, but merely a demand for payment." As discussed in Division 3, the charge is derived from *Person*, supra at 489, and *Timely*, supra at 469, and is a correct statement of the applicable law.

5. State Farm contends the trial court erred in granting Drury's motion in limine relating to Drury's history of tardy payment of his bills, particularly his premiums to State Farm. State Farm also argues it was unfair for the court to have given Drury's charge on State Farm's course of dealing in sending out premium due notices while excluding evidence of Drury's course of conduct in paying his bills late. "Admissibility of evidence is a matter which rests largely within the sound discretion of the trial court, [cit.], and in the absence of an abuse of judicial discretion, this court will not interfere with the trial court's ruling. [Cit.]" (Punctuation omitted.) *Gully v. Glover*, 190 Ga. App. 238, 242 (4) (378 SE2d 411) (1989).

OCGA § 24-2-2 provides, "The general character of the parties and especially their conduct in other transactions are irrelevant matter unless the nature of the action involves such character and renders necessary or proper the investigation of such conduct." " 'Similar acts or omissions on other and different occasions are not generally admissible to provide like acts or omissions at a different time or place. (Cit.)' [Cit.] However, such testimony may be admitted if relevant to an issue in the case and if the evidence 'does not place too great a danger of undue consumption of time, confusion of issues, undue prejudice or unfair surprise. (Cits.)' [Cits.]" *DiMarco's, Inc. v. Neidlinger*, 207 Ga. App. 526 (428 SE2d 431) (1993). This evidence was marginally relevant, if relevant at all, and it was not reversible error to exclude it.

6. State Farm contends the court erred in allowing a type-written recorded statement of Drury made by a State Farm claims adjuster within a few weeks of the incident to be given to the jury for its deliberations. Appellant cites several cases, including *Goins v. Glisson*, 163 Ga. App. 290, 292 (2) (292 SE2d 917) (1982), as support.

Each such case deals only with exclusion of pleadings and responses to discovery requests. State Farm argues that, since Drury was present and testifying in the courtroom, there should be the same concern with admission of this typewritten statement in that it creates an "unfair advantage over oral testimony of the other side, by speaking to the jury more than once." *Shedden v. Stiles*, 121 Ga. 637, 640 (4) (49 SE 719) (1905).

The typewritten report "was not 'written testimony' as, for example, a deposition is. The written deposition is merely prerecorded testimony and, when the questions and answers are read to the jury during the course of the trial, the answers become the testimony and there is no need to duplicate that testimony . . . in its written form. . . . [T]o do so is error because of the added emphasis and therefore unfair advantage the twice-submitted evidence is given." *Vinyard v. State*, 177 Ga. App. 188, 189 (338 SE2d 766) (1985). Documents "recorded with the judicial process in mind," such as pleadings and responses to discovery requests, are generally not allowed to go out with the jury. Id. The typewritten report, which State Farm conceded was not prepared in anticipation of trial, also does not constitute "written testimony" and thus was not improperly submitted to the jury. See also *Whitehead v. Seymour*, 120 Ga. App. 25, 27 (2) (169 SE2d 369) (1969).

7. State Farm maintains the court erred in not permitting the live testimony on direct examination of Maryann Rosemond, an operations supervisor for State Farm, whom counsel presented as the insurer's representative at trial. Rosemond was in attendance during all of the proceedings. The rule of sequestration had been invoked at the beginning of trial, see OCGA § 24-9-61, and Rosemond had already testified on cross-examination. The court found that Rosemond, along with other State Farm witnesses, had violated the rule by meeting together with State Farm counsel during a recess.

"[A] ruling of the trial court either admitting or excluding the testimony of a sequestered witness will not be disturbed in the absence of an abuse of discretion." *Dowdy v. State*, 154 Ga. App. 700 (269 SE2d 530) (1980). A witness who has violated the rule of sequestration in a criminal trial may not be prevented from testifying, *Jordan v. State*, 247 Ga. 328 (276 SE2d 224) (1981), but there is conflict in case law relating to civil trials. Compare *Kenney v. Piedmont Hosp.*, 136 Ga. App. 660, 666 (7) (222 SE2d 162) (1975), with *McCartney v. McCartney*, 217 Ga. 200, 202 (7) (121 SE2d 785) (1961). See also *Bean v. Landers*, 215 Ga. App. 366, 369 (3) (450 SE2d 699) (1994).

Even if preclusion constituted error, it was harmless. See *Kenney*, supra. Rosemond's testimony on cross-examination was already in evidence, and although State Farm's counsel asked to make an

offer of proof, he did not show what he intended to prove by the testimony or that the testimony would be material, relevant or beneficial to State Farm. *Foster v. Nat. Ideal Co.*, 119 Ga. App. 773 (1) (168 SE2d 872) (1969). "[A] case will not be reversed merely because error may have occurred. Appellant is required to show harm as well as error to prevail on appeal [cit.], and this appellant must show by the record as harm cannot be established by unsupported assertions . . . [cit.]. The record in this case reflects that appellant made no proffer" as required. *Hertz Corp. v. McCray*, 198 Ga. App. 484 (402 SE2d 298) (1991).

8. The final enumeration of error is the court's failure to direct a verdict on the issue of bad faith penalties and attorney fees. OCGA § 33-4-6. " 'Penalties for bad faith are not authorized where the insurance company has any reasonable ground to contest the claim and where there is a disputed question of fact. (Cit.) Where the question of liability is close and the facts are disputed so that the insurer has reasonable grounds to contest the claim, no penalty should be permitted. (Cit.) "The test of bad faith within the meaning of the law in such cases is as of the time of trial, in the final analysis, and not at the time of refusal to pay upon demand. Whatever the facts are at the time of such refusal to pay if at the trial there was a reasonable ground for the insurer to contest the claim there can be no finding against the insurance company for bad faith and attorney's fees regardless of the outcome of the case." (Cit.) In determining whether the evidence is sufficient to support the verdict, "(t)he proper rule is that the judgment should be affirmed if there is any evidence to support it unless it can be said as a matter of law that there was a reasonable defense which vindicates the good faith of the insurer." (Cit.)' [Cits.]" *Mass. Bay Ins. Co. v. Hall*, 196 Ga. App. 349, 355 (3) (395 SE2d 851) (1990).

When Drury notified State Farm of his accident and discovered State Farm had cancelled his policy, he informed the insurer that he never received the premium balance due notice. State Farm could produce nothing from its records that indicated it had sent Drury this notice — no copy of the notice and no computer record that notice was sent — yet the company continued to refuse to pay Drury's claim. The jury was correctly charged on this issue, as a paraphrase of OCGA § 33-4-6 and the definition of "bad faith" from *Cimarron Ins. Co. v. Pace*, 212 Ga. 427, 430 (1) (93 SE2d 593) (1956). Based on the evidence and accurate guidance to consider it, the jury was authorized to find that State Farm's refusal to pay the loss sustained by Drury and covered by the terms of his insurance contract constituted bad faith, and thus to award penalties and attorney fees. *Nationwide*, supra at 645.

9. Drury's motion for frivolous appeal is denied.

*Judgment affirmed. Blackburn, J., concurs. Birdsong, P. J., concurs in the judgment only.*

DECIDED JUNE 25, 1996 —
RECONSIDERATION DENIED JULY 11, 1996.

*Greer, Klosik & Daugherty, Robert J. McCune*, for appellant.
*Savell & Williams, Edward L. Savell*, for appellee.