A98A0109. WHEAT ENTERPRISES, INC. v. REDI-FLOORS, INC.
(501 SE2d 30)

BLACKBURN, Judge.

Wheat Enterprises, Inc., a general contractor, employed Redi-Floors, Inc. as a subcontractor on a renovation project relating to one site of the Citizen's Trust Bank (the Project). After the completion of the Project, a dispute arose, and Wheat refused to pay all of the invoices it received from Redi for completed work. Redi sued Wheat, claiming a right of recovery based on contract, commercial account, and quantum meruit. Redi also sought to recover its attorney fees. The jury awarded Redi $38,715.12 in damages,[1] $12,000 in attorney fees, and $55 in costs. Wheat appeals, claiming numerous errors.

---

[1] From the verdict form, it cannot be determined whether the jury based its determination of damages on the basis of contract, commercial account, or some combination thereof. The total amount of damages awarded was written in blanks following both grounds of recovery.

As general contractor for the Project, Wheat hired a number of subcontractors to perform the actual renovation work. Wheat approached Redi and asked it to submit a bid indicating the price it would charge to provide and install floor coverings for three separate floors of the bank building. In February 1994, Redi submitted such a bid to Wheat in the amount of $33,587.37. After this initial bid was rejected, Redi submitted a second bid on May 11, 1994, in the amount of $27,503.91; however, this bid explicitly indicated that it did "not include any of the cut pile carpet for the first floor [of the Project]." Wheat accepted Redi's May 11 bid to work on the Project.

During the course of the Project, there were a number of changes made in both the quality and the quantity of the floor coverings originally chosen. In addition, Redi performed certain extra work not explicitly delineated in its May bid. Peter Brookner, president of Redi, testified that he discussed these changes and extra work with David Wheat, the owner of Wheat Enterprises, and received approval for them. The majority of the changes and extra work related to the first floor of the Project. As the work progressed, Redi sent invoices to Wheat from time to time which described the work performed, but provided only a total amount due. The invoices did not set out a separate price for each task completed, nor did they indicate what work was covered by the May 11 bid and what work was not covered by such bid.

Wheat paid for some of the work Redi performed on the project; however, it eventually discontinued payments, contending that it could not be determined from the invoices what work was covered by the May 11 bid and what work was "extra" to the agreement. In other words, Wheat claimed that it could not tell from the invoices whether it was being overcharged for the work delineated in the May 11 bid. Wheat does not contend that the renovation work actually performed by Redi is defective or unsuitable.

1. In three of its enumerations of error, Wheat contends that the trial court erred in denying its motions for directed verdict regarding several of Redi's claims. "The standard of review of a trial court's denial of a motion for a directed verdict is the 'any evidence' standard, and the evidence is construed most favorably toward the party opposing the motion." *State Farm &c. Ins. Co. v. Drury*, 222 Ga. App. 196, 197 (1) (474 SE2d 64) (1996). Accordingly, this standard of review requires Wheat "to show that there was no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, demanded the verdict sought." (Punctuation omitted.) *Grange Mut. Cas. Co. v. Demoonie*, 227 Ga. App. 812 (3) (490 SE2d 451) (1997).

(a) Wheat contends that the trial court erred in denying its motion for directed verdict regarding damages, contending that Redi

failed to prove its damages with reasonable certainty. Specifically, Wheat argues that Redi's invoices combined contract work and extra work such that it was impossible to separate the two types of damages.[2]

"As to damages, a jury must be able to calculate the amount of damages from the data furnished and it cannot be placed in a position where an allowance of loss is based on guesswork. A jury must be able to calculate loss with a reasonable certainty. The party claiming damages carries not only the burden of proving the damages, but also furnishing the jury with sufficient data to estimate the damages with reasonable certainty. It is not necessary, however, that the party on whom the burden thus rests should submit exact figures." (Citations and punctuation omitted.) *Paul Davis Systems of Savannah v. Peth*, 201 Ga. App. 734, 735 (1) (412 SE2d 279) (1991).

In support of its claims for damages, Redi provided (1) invoices indicating the amount of the outstanding balance owed by Wheat for all work done by Redi; (2) testimony from Brookner as to the approximate cost of the carpeting installed; and (3) approximate quantities of the carpeting installed. Using this evidence, along with prices listed in Redi's May 11 bid, the jury had evidence to determine damages in this case with a reasonable certainty. Furthermore, as the jury could have awarded damages based completely on Redi's account claim without regard to the May 11 bid, Wheat's argument that Redi was required to distinguish between bid work and extra work is not dispositive of this issue. Accordingly, we cannot say that the trial judge improperly denied Wheat's motion for directed verdict in this regard under the any evidence standard.

(b) Wheat next contends that the trial court erred in denying its motion for directed verdict with regard to Redi's claim that it was entitled to recover under the theory of commercial account. Once again, this contention must be judged under the any evidence standard, and the facts must be construed in favor of Redi. *Drury*, supra; *Demoonie*, supra.

Commercial account "means an obligation for the payment of money arising out of a transaction to sell or furnish, or the sale of, or furnishing of, goods or services." OCGA § 7-4-16. "An action on open account is a simplified pleading procedure where a party can recover what he was justly and equitably entitled to without regard to a special agreement to pay such amount for goods or services as they were reasonably worth when there exists no dispute as to the amount due or the goods or services received. An action on open account may be

---

[2] Wheat concedes, however, that, with regard to the main floor of the Project, the jury could have calculated damages based on the contract along with evidence of carpet prices and quantities.

brought for materials furnished and work performed. However, if there is a dispute as to assent to the services or to acceptance of the work done or as to what work was to be performed and the cost, then an action on open account is not a proper procedure." (Citations omitted.) *Watson v. Sierra Contracting Corp.*, 226 Ga. App. 21, 27 (b) (485 SE2d 563) (1997). Furthermore, in the absence of a liquidated demand, OCGA § 7-4-16 is inapplicable. See *Noble v. Hunt*, 95 Ga. App. 804, 809-810 (6) (99 SE2d 345) (1957). "A debt is liquidated when it is certain how much is due and when it is due." (Emphasis omitted.) *Continental Carriers v. Seaboard Coast Line R. Co.*, 129 Ga. App. 889, 890 (2) (201 SE2d 826) (1973). "A liquidated claim is an amount *certain* and *fixed*, either by the act and agreement of the parties or by operation of law; a sum which cannot be changed by the proof." (Punctuation omitted.) *Dept. of Transp. v. Dalton Paving &c.*, 227 Ga. App. 207, 219 (6) (b) (489 SE2d 329) (1997).

In support of its claim based on OCGA § 7-4-16, Redi produced some evidence which satisfies the any evidence standard applicable here. Brookner testified that Redi and Wheat had been doing business for several years; that in the past their relationship was invoice-based and not contract-based; that Redi would simply send Wheat invoices which Wheat historically paid, noting the appropriate invoice number on the payment; and that Redi generally expected to be paid within 30 days of the date of an invoice. When combined with the explicit statement on the May 11 bid that it did not cover the entirety of the work to be done on the Project, Redi's past dealings with Wheat provide some evidence that the parties intended their relationship to go beyond their contract, whether in part or completely, thereby supporting the claim of a commercial account. Furthermore, Brookner testified that he discussed both the quantity and the price of extra work with David Wheat and that David Wheat agreed to such terms. Accordingly, there was some evidence that the work performed by Redi was requested, assented to, and accepted by Wheat, making a claim under OCGA § 7-4-16 applicable. Such evidence also provides a basis to determine that the debt sued on was liquidated, as it was discussed and approved prior to being incurred. As a result, we cannot say that the trial court erroneously denied Wheat's motion for directed verdict on the claim of commercial account.

(c) Wheat further contends that the trial court erred in denying its motion for a directed verdict with regard to Redi's claim for attorney fees. Once more, Wheat's contention must be reviewed based on the any evidence standard. *Drury*, supra.

"OCGA § 13-6-11 allows [attorney fees] where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense. Further, whether or not

the defendant/appellant acted in bad faith in its contractual relations is an issue for the jury to determine." (Punctuation omitted.) *Dalton Paving*, supra at 218 (5). "Bad faith warranting an award of attorney fees must have arisen out of the transaction on which the cause of action is predicated. It may be found in defendant's carrying out the provisions of the contract, that is, in how defendant acted in his dealing with the plaintiff. Bad faith other than mere refusal to pay a just debt is sufficient, provided it is not prompted by an honest mistake as to one's rights or duties but by some interested or sinister motive. So defendants can be held liable for attorney fees if they committed the breach in bad faith." (Citations and punctuation omitted.) *Young v. A. L. Anthony Grading Co.*, 225 Ga. App. 592, 593 (484 SE2d 318) (1997). "As to whether the defendant was stubbornly litigious or caused the plaintiff unnecessary trouble and expense, mere refusal to pay a disputed claim, without suit is not sufficient to award attorney fees. The key to the test is whether there is a bona fide controversy. Where none exists, forcing a plaintiff to resort to the courts in order to collect is plainly causing him to go to unnecessary trouble and expense. However, recovery of attorney fees for stubborn litigiousness is not authorized where there is a bona fide controversy." (Citations and punctuation omitted.) *Typo-Repro Svcs. v. Bishop*, 188 Ga. App. 576, 580 (2) (373 SE2d 758) (1988).

In this case, Brookner testified that he discussed the extra work and carpet modifications with David Wheat prior to completing them. Although David Wheat refuted this claim, the jury could have disbelieved him. As such, there was some evidence that David Wheat was attempting to avoid payment for work he authorized. See, e.g., *Young*, supra. In other words, there was some evidence that David Wheat may have carried out the provisions of the company's agreement with Redi in bad faith or that there was a lack of a bona fide controversy, supporting an award of attorney fees. Accordingly, we cannot say that the trial court erred in denying Wheat's claim for a directed verdict with regard to attorney fees.

2. Wheat contends that the trial court erred in admitting "installation tickets" offered by Redi which indicated the installed quantities for extras and carpeting supplied by Redi. These tickets were filled in by Redi's subcontractors and returned to Redi for its records. Wheat argues specifically that these tickets should be considered records of Redi's subcontractors and that Redi failed to lay the proper foundation for this third-party evidence, including testimony as to the manner in which such records were kept by the subcontractors.

A trial court's decision to admit testimony as an exception to the hearsay rule will not be disturbed absent a finding of abuse of discretion. See *White v. White*, 262 Ga. 168, 169 (415 SE2d 467) (1992). "OCGA § 24-3-14, the Georgia Business Records Act, governs the

admissibility of business records. Subsection (b) requires that a foundation be laid through the testimony of a witness who is familiar with the method of keeping the records and who can testify thereto and to facts which show that the entry was made in the regular course of a business at the time of the event or within a reasonable time thereafter." (Punctuation and emphasis omitted.) *Nalley Northside Chevrolet v. Herring*, 215 Ga. App. 185, 186 (3) (450 SE2d 452) (1994).

Wheat's argument that the installer's tickets in this case should be considered the business records of Redi's subcontractors is misguided. The installer's tickets were filled out by the subcontractors during their employment by Redi for the purposes of billing and reimbursement. Redi then kept these installer's tickets in its own files as part of its records. As such, these documents should be considered the business records of Redi, not the records of the subcontractors. Because these records were Redi's records, not those of a third-party subcontractor, the testimony from Redi's president was appropriate to lay the foundation for this evidence. Accordingly, Wheat's argument in this instance must fail.

3. Wheat contends that the trial court erred in denying its motion for new trial because the verdict returned by the jury was so excessive that it evidenced gross mistake. "The grant or denial of a motion for new trial is a matter within the sound discretion of the trial court and will not be disturbed if there is any evidence to authorize it." (Punctuation omitted.) *Glenridge Unit Owners Assn. v. Felton*, 183 Ga. App. 858 (3) (360 SE2d 418) (1987).

"Unless a jury verdict is palpably unreasonable or excessive, or the product of bias, it will not be disturbed on appeal. OCGA § 13-6-4. . . . It is also true in considering excessiveness that an appellate court does not have the broad discretionary powers invested in trial courts to set aside verdicts." (Citations and punctuation omitted.) *Ford Motor Co. v. Stubblefield*, 171 Ga. App. 331, 341 (7) (319 SE2d 470) (1984). In this case, the jury was presented with invoices totaling $29,569.42 relating to work on the first floor of the project. Considering that interest may have been included in the jury's award, we cannot say that the trial court erred in denying Wheat's motion for new trial on grounds that the verdict was excessive.

4. Wheat contends that the trial court erred in denying its motion for new trial because the verdict handed down by the jury includes a mixture of principal and interest that cannot be accurately reformed by the evidence. However, the transcript before us does not include the court's charge to the jury. Nor does it contain the portion of the trial following such charge, including the publication of the jury's verdict. As such, we have no evidence that Wheat objected to the jury's verdict appropriately to preserve its argument for purposes

of appeal. "Where the transcript is necessary for review and appellant omits it from the record on appeal, the appellate court must assume the judgment below was correct and affirm." (Punctuation omitted.) *Mullins v. Columbia County*, 202 Ga. App. 148, 150 (413 SE2d 489) (1991).

5. Finally, Wheat contends that the trial court erred in denying its motion for new trial because the debts claimed by Redi were not liquidated. As we have previously concluded that such debts were liquidated, see Division 1 (b), supra, we need not consider this argument again.

*Judgment affirmed. McMurray, P. J., and Eldridge, J., concur.*

DECIDED APRIL 1, 1998.

*Smith, Howard & Ajax, Larry S. McReynolds, Scott D. Cahalan*, for appellant.
*Isenberg & Hewitt, Harriet C. Isenberg*, for appellee.